PITTS BANKING CO. v. CLAYTON.

In re CHANDLER.

(Circuit Court of Appeals, Fifth Circuit.   October 5, 1914.)

No. 2505.

EVIDENCE (§ 575*)—COMPETENCY—TESTIMONY GIVEN BY WITNESS IN PRIOR PROCEEDING.

Where a bankrupt, as a witness for the plaintiff in an action by his trustee to recover preferences, gave testimony favorable to defendant, plaintiff was entitled to show that he had given contradictory testimony on a hearing before the referee for the purposes of impeachment, but such testimony was not admissible to prove the facts alleged, and its submission to the jury generally to be considered by them on the issues was prejudicial error.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2407–2409; Dec. Dig. § 575.*]

In Error to the District Court of the United States for the Southern District of Georgia; Emory Speer, Judge.

Action at law by Cook Clayton, as trustee in bankruptcy of Gray Chandler, against the Pitts Banking Company.   Judgment for plaintiff, and defendant brings error.   Reversed.

John R. L. Smith, of Macon, Ga., and J. T. Hill, of Cordele, Ga., for plaintiff in error.

Andrew H. Heyward and J. N. Talley, both of Macon, Ga., for defendant in error.

Before PARDEE and SHELBY, Circuit Judges, and FOSTER, District Judge.

FOSTER, District Judge.   In this matter Cook Clayton, trustee of Gray Chandler, bankrupt, filed his suit against the Pitts Banking Company to recover $1,732.45, the aggregate of some six or more payments made to the bank within four months of the adjudication and alleged to be preferential.   The bank admitted receiving payments aggregating $748.42 on certain notes of Chandler, but denied knowledge of his insolvency at the time, or that same constituted preferences.   At the close of the evidence the bank moved for a directed verdict in its favor, which was denied.   On the trial the plaintiff offered Chandler as a witness. He testified that his business was running along as usual in November, 1910, and he was paying some of his debts, and thought if his goods could be sold at a reasonable profit he would break even, and that the bank was not pressing him.   Certain evidence given by him before the referee on a previous occasion, tending to contradict his statement that the bank was not pressing him, was then read to him.   He was cross-examined by the court concerning the discrepancy, and attempted an explanation, which apparently was not satisfactory.   He was then admonished as follows:

"This is a very serious matter, Mr. Chandler; you are sworn to tell the truth, the whole truth, and nothing but the truth, and not to do that is to

commit perjury, and perjury is a punishable offense; a man doesn't commit perjury in this court, if the court knows it, without having to undergo a trial for it."

In the course of his charge the court took occasion to say:

"You must bear in mind the testimony of all the witnesses, and you must consider the testimony of the bankrupt himself. How was it that he testified on direct examination here, after being put up by Mr. Talley for the trustee as his witness, that the bank did not push him for money? Did he try to convey the impression to the jury that the bank had no reason to know his condition? Yet when we turn to the evidence before the referee it is as follows: 'Q. Didn't they know you were in pretty bad shape financially? A. Yes, sir.' That is an important fact within itself. 'Q. Didn't they know you were in pretty bad shape financially? A. Yes, sir. Q. Who knew that, the cashier? A. The cashier and the directors both knew it, I suppose. Q. How did they know it? A. I had been owing the bank some money some time. Q. Did you have some talks with them just before you left about your condition—tell them you were pretty hard-pressed? A. No, sir. Q. They had been pressing you for payment? A. Yes, sir; they had been squeezing, pushing, wanting money.' Now he tells you the securities wanted that. Is that true? Take the whole case together, the testimony before the referee, did he tell the truth then? If that was the truth, did the bank have a reasonable opportunity to know his financial condition and otherwise that this payment was a preference? Didn't it know that he was in pretty bad shape? He said the directors and cashier both knew it. What is the truth about it? That is for you gentlemen to find."

Defendant excepted to this portion of the charge upon the ground that the report of Gray Chandler's testimony before the referee was not in evidence, and the following colloquy took place:

"The Court: Was not that testimony put in evidence?

"Counsel for Plaintiff: No, sir; but Gray Chandler admitted on the stand here to have so testified before the referee.

"The Court: I withdraw what I said about the evidence taken before the referee, and you will only bear in mind, gentlemen, that portion which Gray Chandler testified to be true here."

Defendant again excepted on the ground that it was not proper to submit either his admission as to what he testified before the referee or the report of the testimony before the referee as evidence of the fact, as it could only be admitted for the purpose of tearing down what he testified to on the stand. Thereupon the court further charged the jury as follows:

"I will modify my charge in that respect, gentlemen. *The evidence which he recited from the stand here that he gave before the referee may or may not be sufficient, as you may regard it in connection with all the other testimony in the case, to show that in point of fact the bank was 'pushing and squeezing' him.* (Italics ours.) You must take his evidence here on that subject in connection with all the other evidence in the case and determine what is the truth. If you believe from his evidence here that he testified one way there, and you see from his evidence and bearing and everything else connected with his manner of giving testimony here that he was leaning improperly toward the defendant here, you can consider it, and take together all the circumstances, and regard that as a circumstance, with the other facts in the case, as illuminative of your efforts to find out what is the truth, viz.: Was the bank pushing him or was it not pushing him?"

The defendant then excepted to said portion of said charge, and instructions as so modified, upon the grounds previously urged, with some amplification. The court declined to further modify the charge, and the

case went to the jury, and resulted in a verdict for plaintiff, on which judgment was subsequently entered. Defendant assigns as errors the overruling of its motion to direct and the remarks of the judge above quoted.

In the view we take of the case, it is unnecessary to further recite or analyze the testimony, except to say that but for the evidence of Chandler given before the referee there was nothing to indicate that the bank was pressing him for payment of his notes. On the contrary, both he and the cashier, who was the only officer in active charge of the bank, testify that it was not pressing him. The importance of Chandler's testimony before the referee had been accentuated by the cross-examination of the court and the admonition to the witness. In this situation it was vitally essential to the defendant that the jury be charged clearly regarding the probative effect of Chandler's former testimony. No objection was raised to its use to show his contradictory statements, and no point is now made on that ground, but in any event it could only be used to impeach his credibility, and could have no effect to prove the facts therein shown. As to this the text-writers agree, and the rule is thus clearly stated by Mr. Jones:

"In some states the statute broadly provides that the one producing a witness may show that at other times he has made statements inconsistent with his present testimony. But under these statutes the courts have frequently rejected such testimony unless surprise or hostility was shown. And when received the courts hold that such statements are admissible *only for the purpose of impeachment* and not to prove the truth of the facts stated in the declaration." Jones on Evidence, paragraph 855.

The portion of the charge complained of was prejudicial to the defendant. To this the judge's attention was called by timely exception. There is nothing in the charge as originally given that would tend to offset or neutralize the effect of the above quoted remarks, and the subsequent modifications do not help matters. On the contrary, they could have no other effect than to give the jury to understand that they might consider Chandler's evidence before the referee as sufficient to show that in point of fact the bank was "pushing and squeezing" him, and that it was an important fact on which recovery might depend.

The charge was error. As for this reason the judgment must be reversed, it is unnecessary to pass on the other assignment.

Reversed and remanded.